## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HOLD CLEANING TECHNOLOGIES, LLC a Delaware limited liability company | )<br>)<br>) **CIVIL ACTION NO. 2:24-cv-2050**<br>) |
| v. | )<br>) _____<br>) |
| AMERICAN MARITIME SERVICES, LLC, a Louisiana limited liability company | ) **JUDGE**<br>)<br>) **MAGISTRATE JUDGE**<br>)<br>) |

## **PLAINTIFF'S COMPLAINT**

PLAINTIFF Hold Cleaning Technologies, LLC ("Plaintiff" or "HCT") brings this Complaint against DEFENDANT American Maritime Services, LLC ("Defendant" or "AMS"), as follows:

## **NATURE OF THE ACTION**

1. This action arises out of AMS's breach of contract, including breach of the Louisiana Lease of Movables Act, La. R.S. § 14.220.1, *et seq.*, conversion of HCT's property, and AMS's unjust enrichment,[1] through AMS's failure to pay to HCT rents due for leased equipment and/or return said equipment, and its continued, unauthorized use of the equipment beyond the lease term.[2]

---

[1] To the extent that HCT's claims for conversion and unjust enrichment are inconsistent with the allegations contained in any other Count, such allegations are pled in the alternative.

[2] AMS's continued use of the equipment beyond the lease term may constitute infringement of HCT's patents, specifically, U.S. Patent Nos. 7,279,051, 7,716,774, and 8,025,070. Should discovery reveal AMS's suspected infringement, HCT will seek to amend this lawsuit and add claims for patent infringement.

PD.46367556.2

2.      HCT is a Delaware limited liability company with its principal place of business in California. Its sole member, David "Nick" Griffith, is a resident of and domiciled in California.

3.      AMS is a Louisiana limited liability company with its principal place of business in New Orleans, Louisiana. AMS provides services to the marine industry including ship hold cleaning, port captain and cargo services, fuel barge cleaning, cargo separations, and cargo lashing.

4.      Relevant to this dispute, HCT licenses equipment which embodies and facilitates its cleaning technology in the maritime industry. HCT initially developed patented Air Flail technology to more efficiently separate the vexingly difficult to remove cement cargo residues from the cargo holds of ocean-going dry bulk cargo vessels. After this initial breakthrough, HCT continued to innovate, and incorporated its technology into customizing air flails and air flail kits for use with other cargoes including Cement Clinker, DRI, fly ash, and slag. HCT's technology was further modified to better remove rust and rust scale from cargo holds—physical material which may contaminate later cargoes. To date, HCT has designed, manufactured and supplied 14 different air flail models primarily for the maritime cleaning industry to better accomplish various cleaning needs.

5.      HCT's air flail models have been extremely successful in the maritime cleaning industry. The technology allows ship owners and contractors to save significant time and money to clean ships. At the same time, HCT's air flail models require an ongoing investment of HCT's time and money. HCT coordinates specific client needs through its prototype engineer, preproduction engineers, air flail tubing technical representatives, and occasionally, adhesive experts and air flow engineers. Therefore, the technology and tools deployed by HCT for its air flail cleaning technology are expensive for HCT to produce and supply, but they are required to produce tools which are most capable of working well in the often harsh and highly variable marine environment. To protect its technology, HCT maintains patent rights as described above, and offers

its technology to various practitioners in the maritime cleaning industry through licenses that are limited in time, and which require the return of the air flails upon completion of the lease term.

6. HCT and AMS (collectively, the "Parties") entered into such lease agreements, described more fully below, whereby AMS leased Air Flail equipment from HCT in exchange for rent payment. At the end of the Parties' last lease agreement, AMS failed to return the leased equipment or pay HCT for the entirety of the lease period.

7. Upon information and belief, AMS used the leased equipment beyond the term of the lease period (and may be still using the leased equipment), without paying all monies owed to HCT. Such use was not authorized by HCT.

8. On June 11, 2024, HCT sent to AMS a demand letter for all unpaid monies for the extended lease term, and requiring the return of its leased equipment, as initially contemplated by the Parties (the "Demand Letter"). A copy of the Demand Letter is attached as **Exhibit A**.

9. AMS's actions constitute breach of contract with HCT, breach of the Louisiana Lease of Movables Act, La. R.S. § 14:220.1, *et seq.*, conversion, and unjust enrichment. AMS's actions also may constitute patent infringement. As a result of AMS's actions, HCT has incurred and continues to incur damages. Accordingly, AMS should be held accountable for its conduct.

## JURISDICTION AND VENUE

10. Jurisdiction is based upon 28 U.S.C. § 1332. This action is between completely diverse parties and HCT's damages exceed $75,000. Specifically, HCT is a citizen of Delaware and California, while AMS is a citizen of Louisiana, and HCT's damages exceed $200,000.

11. This Court has personal jurisdiction over AMS because it is a resident and domiciliary of Louisiana with its principal place of business in New Orleans, Louisiana. Moreover, AMS failed to perform its obligations under its lease with HCT in this district. Thus, a substantial part of the events or omissions giving rise to the claim occurred in this district.

12. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

13. HCT develops and licenses cleaning technology that can and has been used to dry clean dry Portland Cement, and other cargoes from dry bulk cargo vessels, as well as rail cars and some silos, especially to clean and remove rust scale from surfaces. Specifically, HCT has developed an "Air Flail system" for hitting and separating matter (cargo or even rust scale) from surfaces, thereby cleaning the surfaces.

14. Air Flail systems are composed of hollow, flexible tubes passing through and secured to a machined "knuckle." By passing compressed air through the Air Flail knuckles and tubes, the tubes hit (or "flail" around) in a rapid, receptive, random manner with sufficient force to dislodge cargo and debris from surfaces, leaving them clean. The Air Flail cleaning process can be likened to a water hose that snakes or "flails" when the water is turned on and the hose is left unsecured. Just as the water pressure flowing through a common water hose can control how vigorously the hose "flails," the speed and power of the Air Flail may be controlled by increasing or decreasing the air pressure passing through the tubes by selectively opening or closing an air valve as opposed to a water hose water valve.  Thus, when cleaning a cargo hold surface with an Air Flail, the cleaner can adjust the pressure to accommodate the level of adhesion present on the cement cargo hold. HCT therefore supplies a novel form of mechanized / compressed air powered dry-cleaning tools through its Air Flails. HCT's cleaning technology reduces the time and expenses involved with cleaning holds when compared to methods that rely on workers using manual tools, including brooms. Accordingly, Air Flails are very valuable tools in the maritime cleaning industry, and a party that uses Air Flails without paying for the costs associated with the technology or the right to employ patented methods via license would unfairly save itself significant costs and

expenses, to the detriment of HCT, as well as all other companies using and paying for a HCT equipment lease.

15. HCT's sole member is Nick Griffith. Mr. Griffith invented the Air Flail technology and holds three patents related to the same—U.S. Patent Nos. 7,279,051, 7,716,774, and 8,025,070 (the "HCT Patents"). The HCT Patent rights are clearly delineated in the invoices HCT provides to lessees, and are listed publicly on HCT's website at the following address: https://holdcleaningtechnologiesllc.com/patents/.

16. HCT licenses its Air Flail equipment and patented methods to companies who provide cleaning services to, among other items, the holds of ocean-going vessels.

17. In late 2022, HCT entered a non-exclusive month-to-month lease with AMS for the lease of certain Air Flails that are the subject of the HCT Patents. In total, HCT leased to AMS 92 Air Flails from January through February 2023. Specifically, HCT shipped AMS Air Flails pursuant to the Parties' lease on or about the following dates, in the noted amounts:

- January 2, 2023 – 12 Air Flails
- February 5, 2023 – 20 Air Flails
- February 23, 2023 – 20 Air Flails; and
- February 28, 2023 – 40 Air Flails.

18. In turn, AMS returned to HCT 27 Air Flails on March 11, 2023, and an additional 65 Air Flails on March 29, 2023. Stated otherwise, AMS returned to HCT all 92 of the Air Flails leased between January 2, 2023 and February 28, 2023.

19. On April 4, 2023, Beau Blake, Manager at AMS, wrote to HCT indicating that AMS wanted to continue using HCT's equipment. Mr. Blake specifically noted that he was "willing to keep the same arrangement" between AMS and HCT as was previously in place, and that he would "pay for it personally." He further noted that HCT's "flails have been a great cost

savings to our customers and shipowners alike." A copy of Mr. Blake's email is attached as **Exhibit B**.

20. As noted above, under the arrangement between AMS and HCT prior to Mr. Blake's April 4, 2023 email, HCT shipped to AMS the requested Air Flails in exchange for rent per Air Flail, and AMS returned the Air Flails after approximately one month of use.

21. Pursuant to Mr. Blake's April 4, 2023 email, HCT shipped to AMS 45 Air Flails on April 14, 2023.

22. AMS leased the 45 Air Flails from HCT for one month in exchange for a rental payment of $360 per Air Flail, for a total of $16,200. That rental period concluded on or about May 14, 2023. However, as described further below, AMS never returned the 45 Air Flails it received in April 2023.

23. From May 14, 2023, to the present, AMS has neither paid HCT the $16,200 monthly rent agreed to by the parties nor returned the Air Flails. A copy of the invoice for the April 14, 2023, Air Flail shipment is attached to this letter as **Exhibit C.**

24. On October 19, 2023, AMS's Regional Operations Specialist Corey Jackson called HCT's Owner Mr. Griffith to request the lease of additional Air Flails, beyond the 137 that HCT had already provided to AMS. At that time, Mr. Griffith informed Mr. Jackson that HCT could not provide additional Air Flails until the 45 outstanding Air Flails were returned and HCT was adequately compensated. Mr. Griffith memorialized his conversation with Mr. Jackson regarding the 45 outstanding Air Flails in an email dated the same day (the "October 2023 Email"). A copy of the October 2023 Email is attached as **Exhibit D**.

25. In the October 2023 Email, Mr. Griffith notes that he had previously requested the return of the 45 outstanding Air Flails on August 25, 2023, and again on September 4, 2023, at which time Mr. Jackson advised him that HCT would receive the returned Air Flails on September

PD.46367556.2

11, 2023. However, the Air Flails were not returned by that date, or indeed, at any time thereafter. Upon information and belief, AMS has used and continues to use the Air Flails without authorization after the lease period ended on or around May 14, 2023.

26. AMS's failure to pay the outstanding rental payments and to return the 45 Air Flails constitutes breach of contract, breach of the Louisiana Lease of Movables Act, La. R.S. § 14:220.1, *et seq.*, conversion, and unjust enrichment.

27. AMS owes HCT $360 per Air Flail for each month beyond the original lease term (which ended on or around May 14, 2023) for which it has not returned the Air Flails. Because AMS has not returned even one of the 45 Air Flails, it has incurred rents at a total rate of $16,200 per month since the original lease period ended on or about May 14, 2023.

28. On June 11, 2024, HCT sent the Demand Letter via certified mail to five representatives of AMS. HCT received confirmation that the Demand Letter was successfully delivered to all five recipients. *See* **Exhibit A**.

29. In the Demand Letter, HCT demanded that AMS pay all unpaid rents, which at that time totaled $210,600, as well as additional costs HCT had incurred as a result of AMS's conduct. HCT further demanded that AMS return the outstanding 45 Air Flails within thirty days of the date of the letter in order to conclude the lease period. Specifically, HCT placed AMS on notice that the unpaid rents and costs continue to accrue so long as the 45 Air Flails are not returned to HCT. AMS further demanded that HCT cease all unauthorized use of the Air Flails.

30. AMS did not return the Air Flails within thirty days, or at any time thereafter. AMS also did not pay HCT for the months of unpaid rent it had accrued by failing to return the Air Flails. In fact, it did not respond in any way to HCT's Demand Letter. AMS thus continues to incur rent at a rate of $16,200 per month for each month the 45 Air Flails go unreturned. Because AMS

failed to respond in any way to HCT's demands for lease payments and/or the return of the Air Flails, HCT was constrained to bring this suit against AMS.

## COUNT 1 – BREACH OF CONTRACT

31. HCT fully incorporates by reference the allegations of paragraphs 1-30 of this Complaint.

32. By failing to abide by the terms set forth in the Parties' lease agreements, AMS breached its contract with HCT. Specifically, AMS breached its contract with HCT because it failed to: (a) pay HCT rent for the additional months for which the Air Flails were not returned; and (b) return the 45 Air Flails after the end of the one-month lease period (or any time thereafter).

33. HCT has been harmed by AMS's failure to abide by the terms of the lease agreement. Specifically, HCT is owed unpaid rent that has accrued at a rate of $360 per Air Flail per month since May 14, 2023, and which continues to accrue. As of the filing of this suit, AMS has failed to pay for over fifteen months of rent, meaning it has accrued at least $243,000 in unpaid rents for the 45 unreturned Air Flails. Again, such rents continue to accrue for each one-month lease period that passes without the Air Flails being returned.

34. HCT has also been harmed by AMS's failure to return the Air Flails pursuant to the lease agreement, because ordinarily, HCT would refurbish and re-lease the Air Flails to other parties.

35. Further, HCT has incurred costs and fees in its efforts to determine the extent of AMS's unauthorized use of its Air Flails, which it would not have incurred had AMS timely returned the Air Flails and paid all rents owed.

36. Accordingly, AMS is liable to HCT for breach of contract, and HCT is entitled to all damages to be proven at trial together with prejudgment interest, attorneys' fees, and costs, and/or any other rights or remedies it is entitled to under law.

PD.46367556.2

**COUNT 2 – VIOLATION OF THE LOUISIANA LEASE OF MOVABLES ACT,
La. R.S. § 14:220.1, *et seq.*,**

37. HCT fully incorporates the allegations in paragraphs 1-36 of this Complaint.

38. The Parties' agreements whereby AMS leased Air Flails from HCT constitute leases under the Louisiana Lease of Movables Act ("LLMA"), La. R.S. § 14:220.1, because they are agreements for HCT to provide movable property (Air Flails) to AMS for a set period of time (one month), in exchange for rent ($360 per Air Flail per month, for a total of $16,200 per month).

39. Because AMS failed to return the 45 Air Flails shipped by HCT to AMS on April 14, 2023 at the end of the one-month rental period, AMS extended the lease period for the Air Flails by an additional month, and thus, incurred an additional $16,200 in rents owed to HCT. Because AMS never returned the Air Flails to HCT, the lease term continues to renew on a one-month basis. Accordingly, AMS owes unpaid rentals to HCT at a total rate of $16,200 per month beginning in May 2023 and continuing until AMS returns the Air Flails.

40. HCT has been harmed by AMS's violation of the LLMA. HCT has not received rents owed to it by AMS. Additionally, HCT has been harmed by AMS's failure to return the Air Flails, because it cannot refurbish and release the parts to other companies. Further, HCT has incurred costs and fees in its efforts to determine the extent of AMS's unauthorized use of its Air Flails, which it would not have incurred had AMS timely returned the Air Flails and paid all rents owed.

41. Accordingly, AMS is liable to HCT for breach of the LLMA, and HCT is entitled to all damages to be proven at trial, including but not limited to unpaid rents, together with prejudgment interest, attorneys' fees, and costs, and/or any other rights or remedies it is entitled to under law.

**COUNT 3 – CONVERSION**

42. HCT fully incorporates the allegations in paragraphs 1-41 of this Complaint.

43. To the extent that the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pled in the alternative.

44. A conversion is an "act in derogation of the plaintiff's possessory rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite term."[3] A defendant commits conversion when either: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly: or (7) ownership is asserted over the chattel.[4]

45. By failing to return the 45 leased Air Flails at the end of the one-month rental period, AMS has maintained possession of the 45 leased Air Flails beyond the authorized rental period without paying rent to extend the rental period. Accordingly, as of May 14, 2023, AMS's continued possession and/or use of the Air Flails is unauthorized.

46. As set forth above, HCT made several demands for AMS to return the outstanding Air Flails, including in August, September, and October 2023, and again in June 2024 through the Demand Letter. AMS did not respond to any of HCT's demands that it pay additional rents and/or return the Air Flails.

---

[3] *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985).

[4] *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 857 (La. 12/1/98).

47. Thus, in the event that AMS does not retroactively compensate HCT for the unpaid rents for the Air Flails from May 2023 to the present, AMS's failure to return the Air Flails constitutes unauthorized possession of the leased property, and therefore, conversion.

48. Accordingly, AMS is liable for conversion, and HCT is entitled to all damages to be proven at trial together with prejudgment interest, attorneys' fees, and costs, and/or any other rights or remedies it is entitled to under law.

## COUNT 4 – UNJUST ENRICHMENT

49. HCT fully incorporates the allegations in paragraphs 1-48 of this Complaint.

50. To the extent that the allegations in this Count are inconsistent with the allegations contained in any other Count, such allegations are pled in the alternative.

51. After the Parties established a pattern whereby HCT provided Air Flails to AMS in exchange for payment per Air Flail, and then AMS returned the Air Flails after approximately one month of use, HCT shipped 45 Air Flails to AMS on April 14, 2023.

52. AMS possessed the 45 Air Flails beyond the one-month period without compensating HCT for the additional time or returning the Air Flails to HCT.

53. There was no justification or cause for AMS to maintain possession of HCT's 45 Air Flails beyond the one-month period contemplated by the Parties without compensating HCT for the additional time during which the Air Flails were (and still are) in AMS's possession.

54. AMS benefitted directly from the unauthorized use of HCT's 45 Air Flails, because it received the benefit of access to patented hold cleaning technology and equipment without paying the fee associated with such use.

55. As a result of AMS's conduct, HCT incurred damages because it received no compensation for AMS's unauthorized possession of the Air Flails and has never recovered possession of the same.

56. Accordingly, if HCT is not entitled to any other remedy at law, AMS is liable for unjust enrichment and all damages to be proven at trial together with prejudgment interest, attorneys' fees, and costs, and/or any other rights or remedies it is entitled to under law.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, HCT demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff HCT prays that after due proceedings be had, there be judgment in its favor and against Defendant AMS, for all damages to be proven at trial, together with prejudgment interest, attorneys' fees, costs, and all such other legal and equitable relief deemed appropriate under the circumstances.

Dated: August 21, 2024

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Lindsay Calhoun*
Lindsay Calhoun (La. Bar #35070)
Harrison M. Martin (La. Bar #39271)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: lindsay.calhoun@phelps.com
 harrison.martin@phelps.com

**ATTORNEYS FOR HOLD CLEANING TECHNOLOGIES, LLC**